# UNITED STATS DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

Tiffany Hainz,

       Plaintiff,

v.

                            Case No.  21-cv-800

The City of Marshfield, Wisconsin,
And Richard Gramza and
Gary Jepsen,
each in his individual capacity,

       Defendants.

# COMPLAINT

## I.    NATURE OF ACTION

101.    This is a civil action brought by the Plaintiff, Tiffany Hainz, pursuant 42 U.S.C § 1983 and the Fourteenth Amendment to the United States Constitution in order to obtain compensation the injuries caused by Defendant Gramza's intentional sexual harassment and stalking of the Plaintiff in the course of his duties as a detective, and then as the Chief of Police of the Marshfield Police Department, and the deliberate indifference of Gary Jepsen, who learned of Defendant Gramza's conduct, and yet took no meaningful action to protect the Plaintiff.

## II.    JURISDICTION AND VENUE

### A.    Jurisdiction

201.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343(a)(3) (42 U.S.C. §1983 jurisdiction).

### B.    Venue

202.    The Western District of Wisconsin is the proper venue for this action because the City of Marshfield, a defendant in this action, is located in Wood County, Wisconsin, and a substantial number of the events giving rise to the Plaintiff's claims occurred in Wood County, Wisconsin, which is within the geographical boundaries of the Western District of Wisconsin within the meaning of 28 U.S.C. § 1391(b).

## III.    PARTIES

### A.    Plaintiff

301.    Plaintiff Tiffany Hainz is an adult woman and at all material times hereto resided in the State of Wisconsin.

### B.    Defendants

302.    Defendant City of Marshfield, Wisconsin, is a Wisconsin city with the capacity to sue and be sued in this Court.

303.    Defendant Richard Gramza is an adult man who at all times material hereto resided in the State of Wisconsin.

2

304.    At all times relevant to this action, Defendant Gramza was employed by the Marshfield Police Department.

305.    Defendant Gramza was the Chief of Police at the Marshfield Police Department from May 14, 2014 until he officially resigned from his position on March 4, 2021.

306.    Defendant Gary Jepsen is an adult man who at all times material hereto resided in the State of Wisconsin.

307.    At all times relevant to this action, Defendant Jepsen was employed by the Marshfield Police Department.

## IV.    ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

### A.    Defendant Gramza's employment history

401.    Defendant Richard Gramza started work for the City of Marshfield Police Department, as a patrol officer, on St. Patrick's Day, 1997.

402.    On April 1, 2007, he was promoted to Detective.

403.    Defendant Gramza was employed as a Detective until September 25, 2011, when he was promoted to Lieutenant of Detectives.

404.    Defendant Gramza was employed as a Lieutenant of Detectives until May 14, 2014, when he was promoted to Chief of Police.

## B.   Plaintiff Tiffany Hainz's circumstances.

405.   In 2005, Tiffany Hainz, then 23 years old, was convicted of a class G Felony for embezzling from her employer.

406.   She was placed on ten years' probation, later reduced to five, and required to serve six months in jail and maintain absolute sobriety as a condition of her probation, but she was also sentenced to three years in prison and seven years extended supervision, later reduced to five, both imposed and stayed – these were the sanctions she was facing if she violated the terms of her probation and it was revoked.

407.   In Wisconsin, as a person on probation, Ms. Hainz was subject to many rules and restrictions that persons not on probation were not, and her probation was subject to revocation if she were found to have violated any of these restrictions or to have committed any new crime.

408.   After her release from jail, Ms. Hainz was in a particularly vulnerable position because she was facing three years in prison and five years extended supervision if her probation were to be revoked.

409.   Accordingly, her probation agent and any law enforcement officer had tremendous potential power over her, because any report, true or false, that she had violated any term of her probation could lead to her imprisonment.

## C.   Defendant Gramza meets and begins pursuing Ms. Hainz.

410.   On March 21, 2011, Plaintiff Tiffany Hainz was involved in a domestic dispute with her son's father, Brian Young.  (Her name was then Tiffany A. June, but

4

she will be referred to throughout this complaint by her current name, Tiffany A. Hainz.)

411.    While she was picking up her son from Mr. Young's house, Mr. Young pointed an AK-47 at her head because he was upset that Ms. Hainz had full custody of their son.

412.    Neither Ms. Hainz nor her son were injured.

413.    Ms. Hainz reported Mr. Young's conduct to the Marshfield Police.

414.    Defendant Gramza was assigned to the case as a Detective, and met with Ms. Hainz.

415.    Over the ensuing weeks, Defendant Gramza began talking to Ms. Hainz more and more frequently.

416.    Many times, Defendant Gramza's contacts with Ms. Hainz were not related to the investigation he was supposed to be conducting.

417.    He would call, text, and email her to check in on how she was doing.

418.    He would also stop by Ms. Hainz's house with little or no warning, sometimes claiming to be checking the alarm system the Marshfield Police Department had given her for her personal safety.

419.    Only later did Ms. Hainz discover that this is not the type of work a detective would be expected to do on a case.

420.    At the time of these interactions, Ms. Hainz was on probation and Defendant Gramza knew this.

421.    At the time of these interactions, Defendant Gramza made it clear to Ms. Hainz that he knew she was on probation and he knew that if Ms. Hainz violated her probation, she could be subject to three years of prison and five years of extended supervision.

422.    Defendant Gramza would mention to Ms. Hainz that "eight years is a long time," implying that he had power and influence over whether she served those eight years.

423.    On one occasion, Defendant Gramza came over to Ms. Hainz's house to check her alarm.

424.    On that day, when Defendant Gramza came into Ms. Hainz's home, he sat hip-to-hip with her on the large couch in her living room.

425.    Ms. Hainz gave no indication that he was welcome to do this.

426.    Defendant Gramza asked Ms. Hainz, "What would you do if I kissed you right now?"

427.    Ms. Hainz did not Defendant Gramza to kiss her.

428.    Ms. Hainz replied that she was getting married, and Defendant Gramza *was* married.

429.    Defendant Gramza appeared not to take her seriously and laughed at this statement.

430.    Defendant Gramza then kissed Ms. Hainz.

431.    This kiss was not consensual.

6

432.     Ms. Hainz tried to pull away, but the more she resisted, the harder he held her.

433.     Defendant Gramza then forced Ms. Hainz to have sex with him.

434.     Ms. Hainz was afraid of making Defendant Gramza upset, and very afraid to get into an outright physical struggle with a law enforcement officer in a situation where it would come down to her word against his, because he could have used her probationary status to retaliate against her, by charging her with a crime or by seeking to have her probation revoked.

435.     At no time during any of their ensuing sexual encounters did Ms. Hainz want a sexual relationship with Defendant Gramza.

### D.     Defendant Gramza's inappropriate conduct escalated through 2011 and 2012.

436.     After their initial kiss, Defendant Gramza's conduct grew more inappropriate.

437.     Almost all of Defendant Gramza's sexual encounters with Ms. Hainz occurred while he was on duty as a police officer.

438.     Almost all of Defendant Gramza's communication with Ms. Hainz, if not in person, occurred via his police department phone and email.

439.     He began calling, texting, and emailing Ms. Hainz with sexually explicit messages.

440.     On one occasion, Defendant Gramza asked Ms. Hainz "What would you do if you saw a naked Easter Bunny in the backyard?"

441.     Defendant Gramza also repeatedly asked Ms. Hainz to send him sexual pictures and videos.

442.     Ms. Hainz never wanted to send Defendant Gramza sexual images.

443.     Ms. Hainz felt she had no choice but to comply with Defendant Gramza's requests because of his position of power over her.

444.     Defendant Gramza also harassed Ms. Hainz in person at her home, at her workplace, and in his office and police vehicle.

445.     Defendant Gramza came to Ms. Hainz's house against her wishes, even when her children were home.

446.     Each time he came by, he forced her to let him into her house or come outside to speak with him.

447.     Defendant Gramza also forced Ms. Hainz to meet with him while she was at work.

448.     Whenever Defendant Gramza came by her work, Ms. Hainz felt she had no choice but to drop everything and see him.

449.     He insisted that she could close up or take a break whenever she wanted to in order to see him.

450.     Defendant Gramza's visits were so persistent that Ms. Hainz's boss noticed and asked her if she was okay.

451.     Defendant Gramza would sometimes pick up Ms. Hainz in his police car and drive around with her.

8

452.     On several occasions, Defendant Gramza took Ms. Hainz along on police calls.

453.     During these drives, Ms. Hainz became privy to confidential police information.

454.      In several instances, Ms. Hainz overheard confidential information about individuals that she knew personally.

455.     Once, when Defendant Gramza knew that Ms. Hainz knew the person being talked about on the call, Defendant Gramza tried to convince Ms. Hainz to call that person and find them.

456.     On other occasions, Defendant Gramza forced Ms. Hainz to come to his office.

457.     Whenever she was there, Defendant Gramza would try to touch Ms. Hainz inappropriately.

458.     Whether in her home or in Defendant Gramza's car or in his office, Defendant Gramza made attempts to manipulate Ms. Hainz into performing sexual favors for him.

459.     Throughout these encounters, Defendant Gramza made it clear that he had power over Ms. Hainz.

460.     On several occasions when Defendant Gramza had sex with Ms. Hainz, he used his police handcuffs.

9

461.    At least once, Defendant Gramza handcuffed Ms. Hainz to her bed and forced her to look at a picture of her then-husband while having sexual intercourse with Defendant Gramza.

462.    On at least one occasion, Defendant Gramza forced Ms. Hainz to perform oral sex on him in his office.

463.    If Defendant Gramza judged that an ultimate sexual act was impossible at a particular time, he would still sexually touch Ms. Hainz against her will.

464.    If Ms. Hainz refused at any time, Defendant Gramza would persist until she caved in, often using his position of power against her.

### E.    Involvement of Defendant Jepsen while he was Chief of Police

465.    On New Year's Eve, 2011, Ms. Hainz married Keith Hainz.[1]

466.    Defendant Gramza knew about Ms. Hainz's wedding.

467.    Later, Defendant Gramza told her that he was watching as she left the church with her new husband.

468.    Ms. Hainz had not invited Defendant Gramza to the wedding, and did not know he was watching as she exited with her new husband.

469.    Defendant Gramza did not cease his inappropriate pursuit of Ms. Hainz after she was married.

470.    In or around 2013, shortly after the two were married, Mr. Hainz discovered a series of email messages between the Defendant Gramza and Ms. Hainz.

---

[1] The two have since divorced.

471.    Mr. Hainz printed off the emails and took them to the Marshfield Police Department to confront Defendant Gramza.

472.    Mr. Hainz walked into the Department and yelled, "Gramza's fucking my wife!"

473.    Mr. Hainz stormed into Defendant Gramza's office and began yelling at him.

474.    In an attempt to de-escalate the situation, then-Chief of Police, Defendant Gary Jepsen, who at the time was Defendant Gramza's superior, stepped in.

475.    Defendant Jepsen told Mr. Hainz that he would "handle" the situation.

476.    Defendant Jepsen asked Defendant Gramza if he was having a relationship with Ms. Hainz.

477.    Defendant Gramza at first denied that he was.

478.    Defendant Jepsen told Defendant Gramza that he would be fired if he was caught in a lie.

479.    Defendant Gramza then admitted to the relationship, and assured Defendant Jepsen that it would end.

480.    Defendant Gramza called Ms. Hainz and told her that her husband knew about their relationship.

481.    Defendant Gramza asked Ms. Hainz to delete all the evidence of their relationship from her phone and email.

482.    She did as she was instructed, fearing that if she did not she could face retaliation by Defendant Gramza.

11

483.     Defendant Jepsen never contacted Ms. or Mr. Hainz after the confrontation in the Department, and never did anything else at all to determine whether Defendant Gramza had in fact ended his improper relationship with Ms. Hainz.

484.     Neither Keith Hainz, nor anyone else, told Ms. Hainz about Keith's discovery of the emails or confrontation at the police station, and only much later, in August of 2020, did Ms. Hainz discover that the Police Department had known what had been happening between her and Defendant Gramza since Keith Hainz had gone to the Department.

485.     Defendants Jepsen and Gramza threatened other officers with discipline if they mentioned Defendant Gramza's and Ms. Hainz's relationship.

486.     Defendant Jepsen had been grooming Defendant Gramza to take over Jepsen's position as Chief of Police, which Gramza did in 2014, during his relationship with Ms. Hainz.

487.     Defendant Jepsen knew about Defendant Gramza's relationship with Ms. Hainz.

488.     Defendant Jepsen never took any disciplinary action against Defendant Gramza for his involvement with Ms. Hainz.

489.     Defendant Jepsen protected Defendant Gramza and his interests, knowing that the relationship with Ms. Hainz was illegal.

12

490.    Had Defendant Jepsen acted to protect Ms. Hainz, he could have saved her from years of battery, stalking, sexual harassment, and the mental and emotional anguish that were caused by those actions.

### F.    Defendant Gramza resumed his pursuit of Ms. Hainz

491.    After the confrontation between Mr. Hainz and Defendants Gramza and Jepsen, Defendant Gramza stopped calling, texting, and emailing Ms. Hainz for a short time.

492.    However, Defendant Gramza kept driving by Ms. Hainz's house.

493.    After a brief period of time, Defendant Gramza began pursuing Ms. Hainz again in the same ways as before, texting her, calling her, emailing her, asking her for sexual favors, and making sure she knew that he had power over her.

494.    Defendant Gramza rendezvoused with Ms. Hainz at his house several times.

495.    He would close his blinds whenever she came over so that no one would see her.

496.    On one occasion, Ms. Hainz saw Defendant Gramza completing paperwork to become the Chief of Police while she was at his house, and Gramza was, in fact, promoted to Chief of Police on May 14, 2014.

497.    During these encounters, Defendant Gramza convinced Ms. Hainz to start drinking. This represented an extremely significant enhancement of his power over Ms. Hainz, because not drinking was a condition of Ms. Hainz's probation, and if Gramza had reported her for drinking, her probation could have been revoked.

13

498. Ms. Hainz began drinking excessively, finding that it numbed the pain of her encounters with Defendant Gramza.

499. Shortly thereafter, Ms. Hainz's mental health began to decline due to Defendant Gramza's treatment of her.

500. She started seeing a therapist and a psychiatrist.

501. Even so, for the next several years, Ms. Hainz's mental health suffered gravely.

502. Throughout this time, Ms. Hainz experienced a pattern of alcohol abuse, depression, suicidality, and recovery.

503. This pattern lead Ms. Hainz to at least six suicide attempts and at least thirteen instances of hospitalization before 2019.

## G. Ms. Hainz's first attempt to get away from Defendant Gramza

504. A few years later, around 2016 or 2017, Ms. Hainz got an apartment in Minocqua to be closer to her work during the week.

505. Ms. Hainz still had her house in Marshfield and usually lived there during the weekends.

506. Ms. Hainz was glad of this arrangement, as having an apartment in Minocqua meant that she was away from Defendant Gramza during the week.

507. Ms. Hainz arranged to rent the apartment in her employer's name, in an effort to prevent Defendant Gramza from finding her address.

14

508.     Ms. Hainz also changed her phone numbers in an effort to prevent
Defendant Gramza from contacting her.

509.     One day, while Ms. Hainz was at work, she received a call from
Defendant Gramza.

510.     He told her that he had gotten her information from her probation and
parole records.

511.     He once again requested her to send sexually explicit pictures and videos.

512.     She tried to refuse.

513.     Defendant Gramza would not take "no" for an answer, and continued to
insist that she send him the pictures and videos he wanted.

514.     Ms. Hainz gave in, not wanting him to harass her further or show up at
her work as he had in the past, and fearing retaliation since Gramza had reminded her
that he was well aware she was still on probation.

515.     Defendant Gramza continued to pursue Ms. Hainz,  which led her to
move and change her phone number again in 2018.

### H.     Ms. Hainz's second and third attempts to get away from Defendant Gramza

516.     In 2018, Mr. and Ms. Hainz were divorced.

517.     Mr. Hainz never knew that Defendant Gramza had continued his illicit
relationship with Ms. Hainz.

518.     Ms. Hainz moved in with her boyfriend, and a friend of his, in their house
in Ashland.

15

519.    Ms. Hainz did not tell Defendant Gramza that she was moving to Ashland.

520.    Ms. Hainz also changed her cell phone number once again.

521.    Once again, Defendant Gramza found Ms. Hainz by looking up her contact information in her probation and parole records.

522.    Once again, Defendant Gramza asked Ms. Hainz for sexually explicit pictures and videos.

523.    Ms. Hainz showed her boyfriend and his friend the messages from Defendant Gramza, and they advised her to report Gramza's conduct.

524.    Ms. Hainz refused to do so because she was afraid of retaliation by Defendant Gramza.

525.    Due to Defendant Gramza's relentless stalking, Ms. Hainz had a mental breakdown and spent 45 days in an inpatient psychiatric treatment center.

526.    When she was released from the hospital, she returned to Marshfield to live with her parents.

527.    Ms. Hainz did not tell Defendant Gramza she was returning to Marshfield.

528.    Defendant Gramza found Ms. Hainz again through her probation and parole records while she was in Marshfield.

529.    Defendant Gramza continued to ask her for sexually explicit pictures and videos.

16

### I.      Defendant Gramza continues to pursue Ms. Hainz

530.    Late in 2019, Ms. Hainz was diagnosed with stage 4 non-Hodgkin's lymphoma.

531.    Defendant Gramza contacted her saying that he was sorry to hear about her diagnosis.

532.    Ms. Hainz had not told Defendant Gramza about her diagnosis, and did not know how he had learned about it.

533.    Ms. Hainz thanked Defendant Gramza for his sympathy.

534.    In his very next sentence, Defendant Gramza asked Ms. Hainz for more sexually explicit pictures and videos.

535.    Ms. Hainz blocked his number.[2]

### J.      Investigation by the City of Marshfield

536.    In 2020, another police officer, a subordinate of Defendant Gramza, came forward with sexual assault allegations against Defendant Gramza.

537.    Ms. Hainz was asked to add her story to the allegations against Defendant Gramza.

538.    Ms. Hainz gave her story to the City Administrator.

539.    In November of 2020, Defendant Gramza was criminally charged with three counts of misconduct in office in violation of § 946.12(2), Wis. Stats, one count of

---

[2] Prior to this time, Ms. Hainz did not know how to block individual phone numbers.

fourth degree sexual assault in violation of § 940.225(3m), Wis. Stats., and one count of disorderly conduct in violation of § 947.01(1), Wis. Stats.

540.    That criminal prosecution remains pending.

541.    Defendant Gramza was recommended for immediate removal from his position on December 30, 2020.

542.    Defendant Gramza officially resigned from his position after settling with the city on March 4, 2021.

## V.        VIOLATIONS OF LAW

543.    Defendant Gramza violated the Plaintiff's rights secured by the Equal Protection Clause of the Fourteenth Amendment, which include the right to be free from sexual harassment by a person with authority over her. *S.V. v. Kratz*, 2011 WL 6151480 at *6 (E. D. Wis. Dec. 12, 2011); *Doe v. Bd. of Educ. of City of Chicago*, No. 19 C 00263, 2020 WL 1445638, at *9 (N.D. Ill. Mar. 24, 2020).

544.    Defendant Gramza violated the Plaintiff's rights secured by the Due Process Clause of the Fourteenth Amendment, when he used his official power to extort sexual favors from a vulnerable person. *Wudtke v. Davel*, 128 F.3d 1057, 1063-64 (7th Cir. 1997) (holding that sexual assault by a state actor can violate the fundamental right to bodily integrity under the Due Process Clause); see also *id*. (holding that substantive due process claim was adequately stated based on allegations of "serious physical assault," such as the victim being touched, kissed, and forced to perform fellatio without consent); *United States v. Lanier*, 520 U.S. 259, 259, 117 S. Ct. 1219, 1221, 137 L. Ed. 2d 432 (1997).

18

545.     Defendant Jepsen, acting within the scope of his employment as the Chief of Police of the Marshfield Police Department, violated the Plaintiff's rights secured by the Equal Protection Clause of the Fourteenth Amendment, which include the right to be free from sexual harassment by a person with authority over her, through his deliberate indifference to Defendant Gramza's continued sexual victimization of the Plaintiff.

546.     Defendant Jepsen, acting in the scope of his employment as the Chief of Police of the Marshfield Police Department, violated the Plaintiff's rights secured by the Due Process Clause of the Fourteenth Amendment, through his deliberate indifference to Defendant Gramza's continued sexual victimization of the Plaintiff.

547.     The Defendant City of Marshfield is liable for the unlawful acts of Defendants Gramza and Jepsen because they were acting within the scope of their employment pursuant to Sec. 895.46, Wis. Stats.

548.     The City of Marshfield is liable for the wrongful acts of Defendant Gramza after he became the Chief of Police because he then had final policy-making authority for the City of Marshfield with respect to police matters. *Rasche v. Village of Beecher*, 336 F.3d 588, 597 (7th Cir. 2003).

## VI.     STATUTE OF LIMITATIONS

601.     Before April 5, 2018, the statute of limitations for §1983 damages actions filed in Wisconsin was six years. *Gray v. Lacke*, 885 F.2d 399 (7th Cir. 1989)(rejecting the use of the Wisconsin three-year limitations period "for personal injuries to the person"

19

and applying the six-year limitations period "for an injury to the character or rights of another" to § 1983 actions), cert denied, 494 U.S. 1029 (1990). *Hemberger v. Bitzer*, 216 Wis. 2d 509, 574 N.W.2d 656 (1998)(same result as *Gray*, above).

602.     Section 893.53 was amended to shorten the statute of limitations from six years to three years for all claims arising after April 5, 2018.

603.     Defendant Gramza's entire course of conduct is actionable via the continuing violation doctrine. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

604.     Because Ms. Hainz neither knew nor should have known that she had been injured by the unconstitutional deliberate indifference of Defendant Jepsen until the Division of Criminal Investigation and the von Briesen law firm released their investigative reports in 2020, the discovery rule prevented the statute of limitations from running on Ms. Hainz's claims against Defendant Jepsen. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992).

605.     Because Ms. Hainz was prevented from exercising her legal rights through the same campaign of intimidation that coerced her into acquiescing in Gramza's sexual demands of her and forbearing from reporting his wrongdoing to any authorities, the statute of limitations on all of her claims was tolled by duress until Gramza resigned as Chief of Police in 2020.

20

## VII.    DAMAGES

701.    By virtue of the Defendants' unlawful actions alleged above, the Plaintiff

sustained emotional and physical distress and other damages for which she seeks

compensatory damages in an amount deemed just by the Court.

702.    Because the acts of the individual Defendants herein alleged were carried

out maliciously or with reckless disregard for the Plaintiffs' fundamental rights, the

Plaintiffs seek an award of punitive damages against the individual defendants to deter

them and others similarly situated from similar wrongful acts in the future.

## VIII.    CONDITIONS PRECEDENT

801.    All conditions precedent to this action, within the meaning of Rule 9(c),

Fed. R. Civ. Pro., have been performed or otherwise occurred.

## IX.    DEMAND FOR JURY TRIAL

901.    The Plaintiff demands a trial by a jury of six.

## X.           PRAYER FOR RELIEF

1001.    WHEREFORE, the Plaintiff prays the Court to grant a judgment against

the Defendants, awarding her the full amount of her damages together with interest,

costs and attorney's fees and such other and further relief as the Court deems just.

Dated this Friday, December 17, 2021.

Respectfully submitted,

Tiffany Hainz

Plaintiff,

By

/s/ Jeff Scott Olson

_____

THE JEFF SCOTT OLSON LAW FIRM, S.C.
Jeff Scott Olson
State Bar Number 1013284
Emma L. Ferguson
State Bar Number 1115673
131 W. Wilson Street Suite 1200
Madison, WI 53703
Phone:              (608) 283-6001
Facsimile:          (608) 283-0945
Email:        jsolson@scofflaw.com
Email:        eferguson@scofflaw.com

ATTORNEYS FOR PLAINTIFF